The Honorable. The United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may draw near, give their attendance and they shall be heard. God save the United States of America and this Honorable Court is in session. Today's case will be called as previously announced and the times today is United States v. Jose Ilarraza, Appeal Number 191395. Good morning. I'm Chief Judge Howard and sitting with me today are Judge Selya and Judge Kayada. Ms. Glazer, before you begin, there are two housekeeping matters that I need to address first. I would like to ask Judge Selya and then Judge Kayada to test their microphones by saying good morning so their image will appear on each of the other judges' screens. Judge Selya. Good morning. Judge Selya. Good morning. Yes, good morning. This is Bill Kayada, Judge Kayada. And second, Ms. Glazer, you have 10 minutes of argument time. If you are requesting rebuttal, I would like to know now because it will help us with our timekeeping. I don't believe I'll need rebuttal. Thank you for the offer. All right. Thank you. Then you may proceed. Good morning, Your Honor. I would ask one procedural if you could ask my brother to take his camera, then I could see all three judges. Thank you. Good morning to the Honorable Court and thank you for offering this opportunity. Before I begin, I don't see Judge Kayada and it might be important to see him if he wants to ask me a question. Well, I've heard it's actually not very important to see me, but I will get back to you. Oh, okay. As long as I can hear you, I suppose that's what really matters. This is a sentencing guideline case. It's a question of whether the sentencing guidelines were applied correctly. And I want to start with the argument about the two-point increase that my client received for being a, quote unquote, prohibited person. This was a series of gun sales that my client initiated while he was in jail. He was the go-between that connected the confidential informant who was in jail with people outside who were the co-defendants and who made all of the arrangements to find the guns, negotiate the prices, go and meet with the people, provide the guns, sell the guns. And those things that happened, there were a series of conversations, all recorded, that are part of the evidence in this case. However, the last conversation my client has with anyone regarding this is on October 2nd. On October 17th, he was in state court pending proceedings, and he pleaded on October 17th on a felony charge. On October 19th, the last sale occurred. But between October 2nd, when he had the last discussions of any conversations through that, there is nothing that suggests that he knew about the additional sales, that he was part of them in any way. But you don't dispute, Ms. Glazer, that the predicate conviction, the October 17 conviction, was a conviction of the type that would warrant the prohibited person enhancement. I understand you've got a timing argument, but we're not dealing here with an issue about the type of the conviction. Correct, because it was a felony, which is what increases that amount, correct? That we can't dispute. And you don't dispute, do you, that the conspiracy offense itself, I'm not talking about your client's active participation, but the conspiracy itself endured through October 19, when the last arms sale took place. That I also agree with. However, and it goes also to the question of the quantity of firearms for which my client should be charged with, his role in the conspiracy is also significant. And I think though he is in that time frame, one could argue that I know that's the government's argument, although the case that they use is actually, I believe, misplaced, because it's really arguing when one conspiracy ends and another conspiracy begins. In this case, there's nothing that would suggest that the final sales, which he should be charged only with what is reasonably foreseeable to him in the conspiracy. Let's back up to that. Normally, a conspirator is chargeable with the acts of the conspiracy, so long as they're reasonably foreseeable. Excuse me. So long as he hasn't been expelled from the conspiracy or withdrawn from the conspiracy, and you don't claim either expulsion or withdrawal. Not in the formal sense, your honor, however. I'm not talking about the formal sense. I'm talking about the legal sense. There are requirements for withdrawal from a conspiracy. There's no agreement in your brief or elsewhere in the record that your client satisfies those requirements. I think in some senses that the record is silent on that participation. But what we argue, which goes also to his entire role in the conspiracy, he begins the conspiracy. He's the matchmaker. He gets a commission in the beginning, and that's all the funding that he derives from the sales. But he's aware that a series of arms sales, of weapon sales, are ongoing. Are ongoing to a point. To a point. What is it that happens that makes it reasonably foreseeable to him that the trafficking between the people that he has brought together is over? I think the fact that there is no communications about any subsequent sales beyond. You don't mean that. You mean no communication in which he is personally involved. Correct. That happens in conspiracies all the time. No single conspirator has liability that depends on him being involved in, indeed even being aware of, each and every overt act of the conspiracy. Absolutely. If I misspoke, my apologies. I do that his role in the conspiracy and what's still not only, I mean, all in a conspiracy, you're charged, but you're also. Excuse me. Your reference to his role, the district court found that his role was that of organizer. Now I realize you've challenged that. Correct. Soon we're prepared to uphold that finding. Are you still arguing that he's not a prohibited person? Your Honor, I think for the reasons, and perhaps maybe I should talk about the role in that context. I mean, we do contest the leadership, but indeed, I think the fact that, well, it's true. There isn't an explicit withdrawal. The fact that he does not continue his involvement suggests what we believe is his role, which is that he was the matchmaker. He connected the two. I know, but that's not the assumption of my question. Do you agree that if the district court's finding that he's an organizer is supportable, that he was then a prohibited person when the predicate conviction occurred? Well, I think the problem, the leadership enhancement, which is what he uses, what the he does, he makes the beginning connection, but he's not the person who subsequently involved with either the discussions of the pricing, the arrangement to provide the firearms. What about the directions, excuse me, what about the directions he gave to the seller who he brought in? Didn't he direct him to scratch off the serial numbers? In fact, didn't he advise him as to what price to charge? I, of course, disagree on that suggestion. He doesn't, in the conversations, he approves of the fact that the guns that he knows about have been, the numbers have been scratched out, and he likewise approves of the sales. He's not, except in the initial sale that he is, the, he makes or he contributes to make it happen. He's much more, at most, a cheerleader of other people's activities, which does not support a role of organizer. I think it stretches it to say that because he made the initial contact, he was therefore not, therefore continued to be the organizer, because it's clear, we believe, that others took over. Once that connection was made, he was interested, but not either receiving any benefit, nor part of it. You're not suggesting that his personal participation was limited to the first sale. I thought he continued to talk with Tories and set up the second sale. Also, that he assured Tories that the buyers could get the money for future sales, because he knew it was coming out of Santa Domingo. I think he was, I think those are not setting up conversations as much as acting as a cheerleader, in a sense. He is not in control of what happens. I would move to the other point you raised, which is, should he have received the additional points for it being allegedly going to the Dominican Republic? You don't mean points, you mean levels. I'm sorry? You don't mean points, you mean levels. Levels. My apologies. Thank you. I have a question. As I calculate the guideline range, it seems, if I calculate it under your theory, I get 120 months. If I calculate it under the government's theory, I get 120 months. The guideline tells us that when we're adding up, we also have to pay attention to whether there's a statutory maximum. If there is, we set it at the statutory maximum. The trial judge seemed to acknowledge this as well. Therefore, I have the same question the trial judge seemed to have, which is, what difference does any of this make? It's a good question. Unfortunately, I have to say that I would have to win every argument, and particularly the criminal history, in order for it to make a difference, given the reduction that the court gave us. You need the level change, and you also need him not to be a prohibited person. You need all of that. That would be correct. Yes, I agree that we would have to win each of our arguments. I believe I'm almost out of my time. Yes, you've gone over some. Do you have any final point that you need to make, counsel? I believe the rest is in my brief, and thank you very much. All right. Very good. Ms. Glazier, would you then please unmute your audio and your video? I will do that. Mr. Krom, please unmute your audio and video. I'm going to ask judges Selya and Kayada to test their microphones one more time. Judge Selya? Testing my microphone. Judge Kayada? Yes, testing my microphone. Whenever you're ready, Mr. Krom. Yes, your honors. May it please the court, Randall Krom, on behalf of the government. As has already been addressed, the principal question that was discussed in the prior part of the argument, revolving around the offense level, ultimately only matters if the defendant is successful on some of the other claims regarding the enhancements, because the change is all above the statutory maximum, and that's the guidelines recommendation. Although there's a suggestion in the briefing that this might have made a difference to the district court in some other way in deciding the seriousness of the offense, that's undermined by what the district court said, where the court could have been more clear that it was simply, they used the phrase null and void, and an academic argument when talking about these discussions of issues above the guidelines, making clear that it viewed the recommendation of the guidelines as being fixed at the statutory maximum, and that these other matters were simply not of significance. And there's certainly nothing in this particular discussion of what it's relying on for the sentence. Mr. Krom, let's test that a little. It seems to me that a sentencing judge would care in imposing sentence, whether it was imposing someone who was a mere go-between, or someone who was an organizer, someone who was instrumental in setting up an arms sale, and someone who knew that the sale of arms was going to cross an international border, and so on and so forth. So it seems to me that if there was pervasive error in the findings of the guideline enhancements, I at least am uncomfortable in saying that that would not have influenced, or could not logically have influenced the sentence. Yes, Your Honor, that's not the government's position. Our position is that taking the enhancements first, as we did in our brief, each of those has firm evidentiary supports in the conversations. That's a different question. If the enhancements are valid, then my concern goes away. Right. And I think that was why I started where I did in my argument, because that was what dominated in the prior part of the discussion. And one of the two issues that's raised in the reply brief, so seems to be of greatest concern. We do believe that all of the enhancements were properly applied, and that there hasn't been any showing that they were clearly erroneous, which is a difficult standard. There can be questions of interpretation, including by what the defendant meant when he said, scratch it all off, or what role he meant to play when he was directing them as to how much to charge or what firearms to sell. But questions of interpretation can't be clear error as long as the one chosen by the district court was plausible. I think that's at least clearly the case with respect to all the six of the enhancements that were challenged. The only other issue challenged in the reply brief that I say a word about is the question of trafficking. And I just wanted to point out that the defendant relies on this court's case and decision in Marceau, which is actually very favorable to the government's position, because they're the only real sort of circumstantial evidence that favored imposition of a knowledge that it would be the reason to believe that it would be used for illegal purposes was the removal of the serial numbers. And here, that's very clearly true. And we have direct evidence found by the district court and not challenged and shown to be clearly erroneous that he directed that removal. So that alone would seem to be enough to support trafficking. But there are other indications, including the type of firearms, the price of the firearms being over the market price, and other reasons to believe that the defendant, and that's all it needs to be shown is reason to believe, not actual knowledge, that the firearms would be disposed up in an unlawful manner, which we believe satisfies the requirements for that enhancement as well. If the court has any questions about the other enhancements or the criminal history argument, I will address them. But otherwise, I would rely on brief to say that I believe sentence should be affirmed. I don't have additional questions. Judge Celia? No, nor do I. Judge Kayada? I do not. Thank you. All right. Thank you, counsel. Thank you both. That will conclude the argument in this case. Thank you. Thank you. This session of the Honorable United States Court of Appeals is now recessed until the next session of the court. God save the United States of America and this honorable court. Counsel, you may disconnect from the meeting. Thank you.